**[Cite as *State v. O'Malley*, 2020-Ohio-3141.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF MEDINA | ) | | |

STATE OF OHIO

    Appellee

v.

JAMES O'MALLEY

    Appellant

C.A. No.     19CA0032-M

APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    18 TRC 04868

DECISION AND JOURNAL ENTRY

Dated: June 1, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, James O'Malley, appeals from the judgment of the Medina Municipal Court ordering the criminal forfeiture of his vehicle. This Court affirms.

I.

{¶2} O'Malley was charged with one count of driving while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), one count of OVI, in violation of R.C. 4511.19(A)(2), and one count of not driving within marked lanes, in violation of R.C. 4511.33. Mr. O'Malley initially entered a plea of not guilty to all charges. Mr. O'Malley's OVI charge was preceded by two prior OVI convictions. Pursuant to R.C. 4511.19(G)(1)(c)(v), Mr. O'Malley's vehicle—a 2014 Chevrolet Silverado—was seized and forfeiture proceedings commenced in accordance with R.C. 4503.234. During the pretrial proceedings, the trial court granted Mr. O'Malley's motion for an order releasing his seized vehicle from impound and immobilizing it on his property in order to avoid storage fees and charges.

{¶3}    Pursuant to a plea agreement, Mr. O'Malley entered a plea of no contest and the trial court found him guilty of the OVI offense in violation of R.C. 4511.19(A)(1), his third OVI conviction within ten years.  The trial court held a hearing on the forfeiture of the vehicle prior to, and in conjunction with, its sentencing of Mr. O'Malley in the matter.  The trial court sentenced Mr. O'Malley and, as part of that sentence, ordered forfeiture of the vehicle.  The trial court granted Mr. O'Malley's motion to stay the order of forfeiture pending appeal.

{¶4}    Mr. O'Malley timely appealed the trial court's order of forfeiture of his vehicle.  He raises two assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in ordering the forfeiture of [Mr. O'Malley]'s vehicle pursuant to R.C. 4511.19(G)(1)(c)(v), as the order was an unconstitutionally excessive fine in violation of the Eighth Amendment to the U.S. Constitution.**

{¶5}    In his first assignment of error, Mr. O'Malley argues that an individual's limited financial circumstances are a necessary consideration in the constitutional analysis determining whether an economic sanction is an excessive fine under the Eighth Amendment to the United States Constitution.  Mr. O'Malley contends the trial court erred by failing to consider his "financial position and the fact that the forfeiture value greatly exceeded the maximum fine."

{¶6}    The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, Section 9, of the Ohio Constitution includes an identical prohibition.  Criminal forfeiture of property as a form of punishment for a specified offense constitutes a "fine" for purposes of both the Ohio Constitution and the United States Constitution.  *State v. Hill*, 70 Ohio St.3d 25 (1994), syllabus.  "Accordingly, prior to entering an order of forfeiture, the trial court

must make an independent determination whether forfeiture of that property is an 'excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions." *Id.*

{¶7} Preliminarily, we must address the appropriate standard of review because Mr. O'Malley does not suggest a standard of review applicable to his first assignment of error. *See* Loc.R. 7(B)(7) ("Each assignment of error shall be separately discussed and shall include the standard or standards of review applicable to that assignment of error under a separate heading placed before the discussion of the issues."). Although Mr. O'Malley ultimately contends that the forfeiture of his vehicle was unconstitutional, he argues that the trial court applied incorrect law in making its decision. Mr. O'Malley asserts that the trial court relied on dated legal authority and an erroneous analysis that failed to consider factors essential to determining whether the forfeiture of his vehicle violated the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. "[T]he question whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context de novo review of that question is appropriate." *State v. McShepard*, 9th Dist. Lorain No. 07CA009118, 2007-Ohio-6006, ¶ 17, quoting *United States v. Bajakajian*, 524 U.S. 321, 336, fn. 10, (1998).

{¶8} Here, Mr. O'Malley argues the trial court erred by failing to apply the correct constitutional standard to the facts of the case. Mr. O'Malley contends that the trial court failed to consider a recent United States Supreme Court decision holding that the Excessive Fines Clause of the Eighth Amendment is an incorporated protection applicable to the States by the Due Process Clause of the Fourteenth Amendment. *Timbs v. Indiana*, 139 S.Ct. 682 (2019). Mr. O'Malley further asserts that, in *Bajakajian*, 524 U.S. 321, the Supreme Court "focused on the 'proportionality' of a forfeiture to the alleged offense, but also indicated that a person's 'wealth or income' could be relevant to the Excessive Fines Clause analysis." He argues that, taken together,

*Timbs* and *Bajakajian* "leave little doubt that an individual's limited financial circumstances are not only relevant, but indispensable to a constitutional analysis." Mr. O'Malley contends "[t]he fact that the [t]rial [c]ourt's decision does not contain any analysis or case law concerning the most recent Excessive Fines Clause jurisprudence renders it erroneous from the outset."

{¶9} Contrary to Mr. O'Malley's contention, however, the trial court's decision cites to a case wherein the Supreme Court of Ohio recognized more than quarter of a century ago that "prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an 'excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions." *Hill*, 70 Ohio St.3d at 34. Relying on *State v. Kish*, 9th Dist. Lorain No. 02CA008146, 2003-Ohio-2426, the trial court acknowledged

> [f]orfeiture is a form of punishment for a specified offense and thus constitutes a fine for purposes of Section 9, Article 1 of the Ohio Constitution and the Eight[h] Amendment to the United States Constitution. As these provisions prevent the government from imposing an excessive fine upon an individual, the trial court is to determine whether the forfeiture of property would constitute such a prohibited fine prior to entering an order of forfeiture.

(Internal citations omitted.) *Kish* at ¶ 53, citing *State v. Harold*, 109 Ohio App.3d 87, 90-91 (9th Dist.1996), citing *Hill* at syllabus.

{¶10} The trial court acknowledged that, to determine whether a forfeiture is a constitutionally excessive fine, a court must conduct a proportionality review. *Harold* at 94; *State v. Haponek*, 9th Dist. Lorain No. 97CA006826, 1998 WL 34593, *2 (stating that failure of a trial court to properly account for constitutional proportionality factors in a forfeiture determination creates reversible error). In discussing the factors applicable to a proportionality review, the trial court focused on *Kish*, *supra*, and stated that the proportionality review entails the comparison of the harshness of the forfeiture to:

1) the culpability of the defendant; 2) the gravity of the offense; 3) the relationship of the property to the offense; and 4) the harm to the community. Additional factors to consider when determining the harshness of the forfeiture are the fair market value of the property, the intangible and subjective value of the property, and the hardship to the defendant, including the effect of forfeiture on the defendant's family and financial condition. The court should also evaluate the harm caused by the illegal activity and whether the defendant was directly involved in the illegal activity, the amount of drugs involved and their value, the duration of the illegal activity, and its effect on the community.

(Internal citations and quotations omitted.) *Kish* at ¶ 54, citing *Harold* at 94-96; *see McShepard*, 2007-Ohio-6006 at ¶ 17 (summarizing factors).

{¶11} In its judgment entry and forfeiture order, the trial court discussed its factual findings in the context of the relevant factors. The trial court noted that the vehicle was "the medium for committing the OVI" and, therefore closely related to the crime. The trial court also discussed the circumstances of Mr. O'Malley's impairment and arrest in considering his culpability, the gravity of the offense, and the risk he presented to the public. Additionally, considering the risk of recidivism and harm to the community, the trial court discussed Mr. O'Malley's record of alcohol-related incidents and OVI history. The trial court also recognized that Mr. O'Malley's OVI had not resulted in harm to person or property in this particular instance but found under these circumstances that the potential for such harm remained great.

{¶12} Mr. O'Malley contends that the trial court's analysis did not incorporate "new requirements" that a court must consider. Specifically, Mr. O'Malley asserts that the trial court was required to "heavily consider" his financial position "and the maximum statutory fine when conducting [the] excessive fines analysis." Mr. O'Malley's contention is belied by the record. Per review of the trial court's decision discussed below, Mr. O'Malley has not identified any factor the trial court was required, but failed, to consider in its analysis.

{¶13} In its discussion, the trial court specifically considered the value of Mr. O'Malley's vehicle—approximately $31,000.00—in light of the $2,750.00 maximum fine for his conviction. The trial court considered the fine-to-forfeiture ratio in the present matter to the ratios of other cases. The trial court concluded that the forfeiture was not disproportionate or an excessive penalty in that regard.

{¶14} Further, the trial court discussed the hardship that forfeiture would impose on Mr. O'Malley. Considering Mr. O'Malley's testimony, the trial court observed that he was a single, unemployed 31-year old living with his grandmother. The court noted that, although Mr. O'Malley testified that he used the vehicle for work, he had been unemployed since this OVI incident. The trial court found that Mr. O'Malley was without notable expenses or obligations and he enjoyed a stable standard of living without employment.

{¶15} Upon consideration of the evidence and the proportionality factors it deemed relevant, the trial court concluded that Mr. O'Malley had not shown by a preponderance of the evidence that the forfeiture of this vehicle was an unconstitutionally excessive fine or disproportionate penalty. *See State v. Ziepfel*, 107 Ohio App.3d 646, 653 (1st Dist.1995). Upon finding that the forfeiture was not unconstitutionally excessive, and further finding that the forfeiture was mandatory pursuant to R.C. 4511.19(G)(1)(c)(v), the trial court ordered forfeiture of the vehicle.

{¶16} Within this same assignment of error, Mr. O'Malley discussed facts he believes relevant to the factors he accuses the trial court of omitting from its analysis. He suggests that, in light of such facts, if the trial court had considered those factors and conducted the proper analysis, it would have concluded that the forfeiture of his vehicle was unconstitutionally excessive. Additionally, Mr. O'Malley argues, because of the Supreme Court's decision in *Timbs*, "this Court

faces the task of interpreting and applying [the Excessive Fines Clause of the Eighth Amendment] to the facts of this case."

**{¶17}** Mr. O'Malley improperly attempts to merge this limited factual or evidentiary argument with his argument that trial court erred as a matter of law. *See* Loc.R. 7(B)(7). Further, Mr. O'Malley has not developed this limited argument to establish that the forfeiture was a constitutionally excessive fine in violation of the Eighth Amendment. *See* App.R. 16(A)(7). "[T]his Court will not 'guess at undeveloped claims on appeal' or construct arguments to support an assignment of error." *State v. Beverly*, 9th Dist. Summit No. 28627, 2019- Ohio-957, ¶ 6, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. We have repeatedly held that, "[i]f an argument exists that can support [an] assignment of error, it is not [our] duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

**{¶18}** Even assuming he could establish that the trial court applied the wrong standard, this Court would not, as Mr. O'Malley suggests in his brief, undertake a review to make findings on the issue in the first instance. Rather, it would require this Court to remand the matter for the trial court to analyze the issue under the correct standard. *See Hill*, 70 Ohio St.3d at 34-35; *Haponek* 1998 WL 34593 at *2. Nonetheless, our review of the record demonstrates that the trial court did consider relevant legal authority and, specifically, the factors that Mr. O'Malley faults it for failing to consider. Mr. O'Malley has not identified an error in the trial court's application of law. Accordingly, his argument lacks merit and his first assignment of error is overruled.

### Assignment of Error II

**The trial court erred in ordering the forfeiture of [Mr. O'Malley]'s vehicle as R.C. 4511.19G)(1)(c)(v) is unconstitutional on its face and as applied herein pursuant to the Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution and Section Two, Article One of the Ohio Constitution.**

{¶19} In his second assignment of error, Mr. O'Malley argues that R.C. 4511.19(G)(1)(c)(v) is unconstitutional because it violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution. Mr. O'Malley's assignment of error asserts that the statute is unconstitutional both "on its face and as applied[.]"

{¶20} An independent review of the record reflects that the trial court entered an order granting Mr. O'Malley leave to file an "objection to vehicle forfeiture and request for proportional review hearing." Although the trial court's judgment entry implies Mr. O'Malley filed this motion seeking leave on August 16, 2018, the motion is not in the record. In the judgment entry, the trial court specified that if Mr. O'Malley is found guilty of a third OVI in ten years, the court would schedule a forfeiture hearing under R.C. 4503.234 "automatically." The trial court granted leave "to address by brief in advance of such hearing the excessive penalty and proportionality issues" and stated that the brief needed to be filed and served at least seven days prior to the forfeiture hearing. However, the record reveals no written objection or other filing reflecting an argument that R.C. 4511.19(G)(1)(c)(v) is unconstitutional on equal protection grounds.

{¶21} Although Mr. O'Malley asserts in his brief that he "filed a written objection to the forfeiture of his vehicle, alleging that the forfeiture was an unconstitutionally excessive fine and the statute itself was unconstitutional[,]" he does not provide a citation to the record to indicate where this written objection was filed. App.R. 16(A)(7). Nor does Mr. O'Malley's brief contain a citation to the part of the record where, as he claims, the trial court "denied [his] constitutional objections." *See id*. *See also* App.R. 16(A)(6). As appellant, Mr. O'Malley bore the "'responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal.'" *State v. Boatright*, 9th Dist. Summit No. 28101, 2017-

Ohio-5794, ¶ 46, quoting *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 16, citing App.R. 9.

{¶22} A review of the transcript of the forfeiture hearing shows that counsel for Mr. O'Malley orally asserted that the forfeiture statute violates the equal protection clauses of the Ohio Constitution and the United States Constitution. At the hearing, Mr. O'Malley argued that, if the vehicle he was driving at the time of his third OVI offense in ten years had not been registered in his name, the vehicle would not be subject to forfeiture. He argued that any individual who owned the vehicle he was driving under such circumstances would be subject to forfeiture, while an individual committing the same offense in a vehicle not registered in his name would avoid the penalty altogether. Mr. O'Malley argued that punishing an offender more severely merely because he owns the vehicle "is a plain protection violation[.]" Additionally, Mr. O'Malley argued that it was unfair that offenders with vehicles subject to forfeiture face different penalties depending on the value of the vehicle they will lose through the forfeiture.

{¶23} In response, the trial court acknowledged the hardship that forfeiture would cause, but implied that there was a rational basis for imposing forfeiture on an individual committing an OVI in his vehicle. The trial court did not make an explicit decision regarding this equal protection argument during the hearing and did not address it at all in the written decision. However, the trial court impliedly rejected the argument by ordering forfeiture of the vehicle.

{¶24} The arguments Mr. O'Malley raises in his merit brief on appeal go beyond the limited argument he raised in the trial court. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Accordingly, this analysis is confined to the limited equal protection argument Mr. O'Malley made to the trial court. This Court reviews a

constitutional challenge de novo. *State v. Honey*, 9th Dist. Medina No. 08CA0018-M, 2008-Ohio-4943, ¶ 4.

{¶25} The relevant portion of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause states that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." Article I, Section 2, Ohio Constitution. These equal-protection provisions are "functionally equivalent" and are generally construed and analyzed in essentially the same manner. (Internal citations omitted.) *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 17; *but see State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 21 (The Ohio Constitution, can and will be interpreted so as to afford greater rights to our citizens when "such an interpretation is both prudent and not inconsistent with the intent of the framers.")

{¶26} "[T]he Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, ¶ 30, quoting *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, ¶ 6. "An equal-protection analysis of any law centers upon the law's classification of persons and whether the classification relates to a legitimate government interest." *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 24, citing *State ex rel. Doersam v. Indus. Comm.,* 45 Ohio St.3d 115, 119-120 (1989). Equal protection "does not prohibit a legislature from creating laws that treat a group of people differently from others outside the group. But it does prohibit different treatment based on criteria that are unrelated to the purpose of the law." *Id.* citing *Johnson v. Robison*, 415 U.S. 361, 374 (1974); *Doersam* at 119-120.

**{¶27}** "The preliminary step in conducting an equal protection analysis regarding a particular statute is to examine the classifications created by the statute in question." *Burnett* at ¶ 31, citing *McCrone a*t ¶ 11; *Conley v. Shearer*, 64 Ohio St.3d 284, 290 (1992). Mr. O'Malley argued that R.C. 4511.19(G)(1)(c) creates a separate class of OVI offenders who committed a third offense in ten years *while operating a vehicle registered in the offender's name*. Pursuant to R.C. 4511.19(G)(1)(c), "an offender who, within ten years of [his] offense, previously has been convicted of or pleaded guilty to two violations of [R.C. 4511.19(A) or (B)] or other equivalent offense is guilty of a misdemeanor. A court is required to impose a sentence on such an offender that includes, "if the vehicle is registered in the offender's name, criminal forfeiture of the vehicle involved in the offense in accordance with [R.C. 4503.234]." R.C. 4511.19(G)(1)(c)(v). Thus, among the offenders having committed a third OVI offense in ten years, R.C. 4511.19(G)(1)(c)(v) creates a classification of offenders—subject to the additional forfeiture punishment—who committed the offense while driving a vehicle registered in the offender's own name. This class is distinguished from those offenders who committed the same offense while driving a vehicle that was *not registered in the offender's* name and are, therefore, not subject to the additional punishment of forfeiture.

**{¶28}** "Courts apply varying levels of scrutiny to equal-protection challenges depending on the rights at issue and the purportedly discriminatory classifications created by the law." *Cordray*, 2010-Ohio-4908 at ¶ 18. "[A] statute that does not implicate a fundamental right or a suspect classification does not violate equal-protection principles if it is rationally related to a legitimate government interest." *Id.*, citing *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 39. Mr. O'Malley does not contend that a fundamental right or suspect classification is implicated, therefore, a rational-basis review applies. "The rational-basis test involves a two-step

analysis[:]" (1) we must "identify a valid state interest[,]" and (2) "we must determine whether the method or means by which the state has chosen to advance that interest is rational." *Cordray* at ¶ 19, quoting *McCrone*, 2005-Ohio-6505 at ¶ 9.

{¶29} Regarding the first prong of the analysis, Mr. O'Malley acknowledges that the state has a legitimate interest in deterring impaired driving. *See Akron v. Kirby*, 113 Ohio App.3d 452, 460 (9th Dist.1996). He does not challenge the notion that the forfeiture penalty of R.C. 4511.19(G)(1)(c)(v) is aimed at the legitimate state interest in deterring impaired driving. Therefore, the first prong of the equal protection analysis is satisfied. *See Cordray* at ¶ 29.

{¶30} We turn next to the second prong of the analysis to consider whether the forfeiture penalty applicable to an OVI offender who commits a third OVI offense in ten years—while driving a vehicle registered in the offender's name—is rationally related to the state's interest in deterring impaired driving. "'[E]qual protection requires * * * that reasonable grounds exist for making a distinction between those within and those without a designated class.'" *Mole*, 2016-Ohio-5124 at ¶ 61 quoting *State v. Buckley*, 16 Ohio St.2d 128, 134 (1968). However, "'[u]nder the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Id*. at ¶ 27, quoting *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 91. "'[S]tatutes are presumed to be constitutional and * * * courts have a duty to liberally construe statutes in order to save them from constitutional infirmities.'" *Id*. quoting *Eppley v. Tri-Valley Local School Dist. Bd. of Edn*., 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 12. "The party challenging the constitutionality of a statute 'bears the burden to negate every conceivable basis that might support the legislation.'" *Id*. quoting *Columbia Gas* at ¶ 91.

{¶31} Mr. O'Malley argued that the classification was unfair because, if the vehicle he was driving at the time of his third OVI offense in ten years had not been registered in his name,

the vehicle would not be subject to forfeiture. In essence, the sole reason he was subjected to the additional penalty of forfeiture was because he happened to commit the offense while driving a vehicle registered in his own name. By contrast, he argued, any individual committing the same offense in a vehicle not registered in his name would avoid the penalty altogether. Mr. O'Malley argued that punishing an offender more severely merely because he owns the vehicle "is a plain protection violation[.]" He also argued that it is unfair that offenders within the identified class face different penalties depending on the value of the vehicle they stand to lose through the forfeiture.

{¶32} We acknowledge that Mr. O'Malley has highlighted a disparity in outcomes that may result as a consequence of the same conduct: committing a third OVI offense in ten years. Nonetheless, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." (Internal citations and quotations omitted.). *Cordray*, 2010-Ohio-4908 at ¶ 32. Mr. O'Malley has presented very limited argument in light of this highly deferential standard. Mr. O'Malley has failed to "'negate every conceivable basis that might support the legislation[,]'" and, consequently, failed to demonstrate that the means chosen to advance the state's interest in deterring impaired driving is not rational. *Id*. at ¶ 20, quoting *Columbia Gas* at ¶ 91. Therefore, we cannot agree with Mr. O'Malley's contention that the forfeiture provision of R.C. 4511.19(G)(1)(c)(v) violates the Equal Protection Clauses of the United States Constitution or Ohio Constitution.

{¶33} Mr. O'Malley's second assignment of error is overruled.

III.

{¶34} Mr. O'Malley's first and second assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I agree with the lead opinion that Mr. O'Malley's first assignment of error should be overruled. Regarding the decisions of the United States Supreme Court that Mr. O'Malley

argues the trial court should have applied, I conclude that, although the trial court may not have referred to *Timbs* or *Bajakajian* in its decision, the proportionality factors it applied from this Court's precedent are more thorough than the ones suggested in those cases. Accordingly, any error by the trial court in failing to reference the most recent United States Supreme Court decisions on excessive fines was harmless. Regarding whether the trial court adequately considered Mr. O'Malley's financial situation, I agree with the lead opinion that the trial court did not fail to consider any required proportionality factor.

{¶36} I do not agree with the lead opinion that Mr. O'Malley failed to properly develop an argument that the forfeiture constitutes an unconstitutionally excessive fine. I believe this Court must reach the merits of the proportionality issue and determine whether the forfeiture of Mr. O'Malley's vehicle constitutes an excessive fine. I would conclude, however, that, under the precedent of this Court, it does not. In *State v. Harold*, 109 Ohio App.3d 87 (9th Dist.1996), this Court examined whether the forfeiture of the defendant's home was an excessive fine. The defendant had sold $40 worth of crack cocaine to a confidential informant and his interest in the house was, at best, $7,500 plus appreciation. This Court noted that the Second Circuit had upheld the forfeiture of a condominium in which the defendant had $68,000 in equity after he sold $250 worth of crack cocaine. *Id*. at 94. Considering the Second Circuit's decision, this Court determined that the forfeiture of the defendant's approximately $7,500 interest in his home was not an unconstitutionally excessive fine. *Id*.

{¶37} Although Mr. O'Malley's vehicle may have been worth $31,000, the trial court found that his investment in it was only $5,000, which is less than three times the maximum fine for his offense. Upon review of all the factors outlined in *Harold* and *McShepard*, I conclude that the forfeiture of Mr. O'Malley's vehicle was not an unconstitutionally excessive fine. *See State v.*

*Scheibelhoffer*, 11th Dist. Lake No. 98-L-039, 1999 WL 476106, *5 (June 30, 1999) (concluding that forfeiture of property worth $31,470 for sale of $250 of drugs, a felony of the fifth degree with a maximum fine of $2,500, did not violate excessive fines clause).

{¶38} I also agree with the lead opinion that Mr. O'Malley's second assignment of error should be overruled. Mr. O'Malley's equal protection argument focuses on the differences between "owners" and "non-owners" of vehicles. Section 4511.19(G)(1)(c)(v), however, does not use such language. Whether the vehicle an offender was operating during the commission of an offense is subject to forfeiture depends on whether the vehicle was "registered in the offender's name[.]" R.C. 4511.19(G)(1)(c)(v). The General Assembly has coupled forfeiture of a vehicle to its registration not ownership. Thus, a leased vehicle, which is commonly registered in the lessee's name, can be subject to forfeiture under Section 4511.19(G)(1)(c)(v) even though the lessee is not the titled "owner" of the vehicle.[1] In addition, as Mr. O'Malley points out in his brief, Section 4503.234(D) provides that a deputy registrar may not accept an application for registration of a motor vehicle if a vehicle that was registered in the person's name was criminally forfeited within the previous five years. Accordingly, it is not accurate to focus on the differences between "owners" and "non-owners." To the extent that Mr. O'Malley argues that Section 4511.19(G)(1)(c)(v) unfairly punishes vehicle owners while all others are not subject to forfeiture, I conclude that his argument is not supported by the language of the statute.

{¶39} Mr. O'Malley also argues that treating those who own their vehicles different from those who do not is not rationally related to a legitimate state interest. I disagree. When an offender owns or has a long-term lease of a vehicle, the offender has ready access to the dangerous

---

[1] Section 4503.234(B)(2) provides an opportunity for the lienholder to avoid forfeiture of the vehicle.

instrument that the offender used to create a risk to the public. The State has an interest in reducing a repeat offender's opportunity to re-offend. Forfeiture also serves as an additional deterrent to repeat offenders who own or lease their vehicles not to commit another offense. *See City of Akron v. Kirby*, 113 Ohio App.3d 452, 460 (9th Dist. 1996) ("The state has a legitimate interest in deterring impaired driving, and the seizure of an * * * offender's vehicle serves this interest."). It would not make sense for the State to apply Section 4511.19(G)(1)(c)(v) to repeat offenders who do not own or have a long-term lease of a vehicle because the State cannot threaten to take away something that a person does not have. In addition, a statute that allowed the forfeiture of any vehicle that an offender was driving could unfairly punish innocent third parties.

{¶40} For the foregoing reasons, I conclude that the trial court did not violate Mr. O'Malley's constitutional rights when it ordered the forfeiture of his vehicle. I, therefore, concur in the judgment of the lead opinion.

CARR, P. J.
DISSENTING.

{¶41} I respectfully dissent in regard to the lead opinion's resolution of the first assignment of error as I am greatly troubled that the trial court's constitutional proportionality analysis did not account for the drastic impact that forfeiture of O'Malley's truck would have on his personal financial condition.

{¶42} O'Malley raises a number of arguments in support of his first assignment of error. Irrespective of whether the recent United States Supreme Court decisions created a new requirement for a constitutional forfeiture analysis, it is well settled law that a proportionality review requires the trial court to weigh the harshness of the forfeiture against, among other factors, "the fair market value of the property, the intangible and subjective value of the property, and the

hardship to the defendant, including the effect of forfeiture on the defendant's family and financial condition." *State v. Kish*, 9th Dist. Lorain No. 02CA008146, 2003-Ohio-2426, ¶ 54. Each factor must be evaluated on a case-by-case basis with no single factor carrying more weight than another. *Id*.

{¶43} Here, I would conclude that the trial court's proportionality analysis failed to account for the subjective and intangible value of O'Malley's vehicle, as well as the grave financial hardship that would befall O'Malley as a result of forfeiture.

{¶44} At the time of the hearing, O'Malley was an unemployed 31-year-old who lived with his grandmother. In setting forth its factual findings, the trial court determined that O'Malley had paid his grandparents only $5,000 for the vehicle, which they had purchased new at an estimated price of $39,987. The vehicle remained in very good condition and had an estimated current value of $31,000. While the trial court set forth the standard in *Kish*, its analysis stressed that forfeiture would serve to protect the public given that this was O'Malley's third OVI conviction in ten years. Although noting that the maximum fine in this case was $2,750, the trial court observed that the monetary values at issue here did not support the conclusion that forfeiture would be an excessive penalty. Instead of grounding that conclusion in the totality of the circumstances in regard to this particular defendant, however, the trial court cited cases such as *State v. Ziepfel*, 107 Ohio App.3d 646 (1st Dist.1995), in support of its conclusion that forfeiture of an asset with a value approximately 11 times that of the maximum fine was not unconstitutionally excessive.

{¶45} The trial court opined that the financial hardship to O'Malley "seem[ed] comparatively low" given that he continued to live with his grandmother and did not have a family to support. While acknowledging that transportation issues impacted O'Malley's employment

prospects, the trial court did not directly assess the extent to which forfeiture of his truck would harm O'Malley's personal financial condition. O'Malley's truck, which he believed he could sell for between $36,000 and $38,000, remained a significant financial asset. Losing control of that asset dramatically decreased O'Malley's financial flexibility as he attempted to navigate unemployment and move his life in a positive direction. Moreover, O'Malley's ability to acquire his truck would not have been possible but for the benevolence of his grandparents, meaning the truck had significant subjective and intangible value, in addition to its practical value as a financial asset. Under these circumstances, I would reverse and remand for the trial court to undertake a constitutional proportionality analysis that accounted for the drastic impact that forfeiture of O'Malley's truck would have on his personal financial condition.

APPEARANCES:

RONALD ANNOTICO, Attorney at law, for Appellant.

J. MATTHEW LANIER, Prosecuting Attorney, for Appellee.