[Cite as *State v. Atkinson*, 2020-Ohio-3522.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN )

STATE OF OHIO  C.A. No. 19CA011481

    Appellee

    v.  APPEAL FROM JUDGMENT
ENTERED IN THE
JAMES L. ATKINSON, III  COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
    Appellant  CASE No. 17CR095486

DECISION AND JOURNAL ENTRY

Dated: June 30, 2020

CALLAHAN, Presiding Judge.

{¶1} Appellant, James Atkinson, III, appeals his convictions by the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} On December 18, 2016, at approximately 11:15 p.m., Elyria police officer Paige Mitchell noticed a black, four-door sedan with a license plate light that was not operational. When she ran the license plate through LEADS, she learned that the registered owner of the vehicle, Mr. Atkinson, had an outstanding bench warrant from Elyria Municipal Court. Officer Mitchell pulled alongside the car and compared Mr. Atkinson's BMV photograph with the driver, noted that they appeared to be the same individual, then initiated a traffic stop. Mr. Atkinson acknowledged that he was the owner of the vehicle and provided the officer with his driver's license, and Officer Mitchell placed him under arrest on the outstanding warrant.

{¶3} Officer Mitchell determined that Mr. Atkinson's vehicle should be impounded pursuant to department policy, and she contacted a towing service to move the vehicle. In the meantime, she and two officers who had arrived to assist her began conducting an inventory of the vehicle's contents. As she inventoried the contents of the trunk, Officer Mitchell noticed a backpack that was zipped, but not locked or sealed. She discovered a large quantity of what appeared to be marijuana in a vacuum-sealed bag in the main compartment and, in the front compartment, "a very large, substantial amount" of suspected cocaine in rock form. Officer Mitchell's supervisor advised her to have the vehicle towed to the police department, where the officers later completed a search of the vehicle. Officer Mitchell discovered several other large and small bags of marijuana in the trunk, a bag containing a white, powdery substance, and a large bag holding smaller plastic bags containing a white, powdery substance. The officers who inventoried the passenger compartment of the vehicle found a digital scale with white, powdery residue on it; a box of plastic sandwich baggies; and five cellular phones. Mr. Atkinson carried a sixth. He also had $1,267.76 cash on his person.

{¶4} Mr. Atkinson was indicted on one count of trafficking cocaine in an amount equal to or in excess of 100 grams and one count of possessing cocaine in an amount equal to or in excess of 100 grams. Both cocaine-related charges were accompanied by a major drug offender specification. He was also indicted on one count of trafficking in marijuana in an amount equal to or in excess of 1,000 grams but less than 5,000 grams and one count of possession of marijuana in the same amount. Mr. Atkinson was also charged with one count of possessing criminal tools and one count of using or possessing with the purpose to use drug paraphernalia. Five of the six charges were accompanied by a forfeiture specification in connection with the cash found on Mr. Atkinson's person, the six cellular phones, and his vehicle.

{¶5}     One day before trial was scheduled to begin, Mr. Atkinson moved to suppress all of the evidence gained as a result of the stop and subsequent inventory search of his vehicle.  The trial court denied the motion to suppress as untimely.  Mr. Atkinson failed to appear for trial the next day, and a capias issued for his arrest.  Eight months later, Mr. Atkinson was arrested on the outstanding capias.  A new attorney filed a second motion to suppress on behalf of Mr. Atkinson that reiterated some, but not all, of the arguments made in the earlier motion.  The trial court denied the motion to suppress after conducting a hearing the day before trial was scheduled to begin.

{¶6}     The day after voir dire concluded and the jury was empaneled, immediately before trial commenced, Mr. Atkinson's attorney objected to the composition of the jury array and moved for a mistrial.  The trial court denied the motion.  After the State presented its case, Mr. Atkinson moved to dismiss the major drug offender specifications as unconstitutional.  The trial court denied the motion.  The jury found Mr. Atkinson guilty of all charges.  After the jury rendered its verdict, Mr. Atkinson filed a written motion requesting that the trial court declare the major drug offender specifications unconstitutional.

{¶7}     At the beginning of the sentencing hearing, the trial court denied all outstanding motions, including Mr. Atkinsons's pending motion to declare the major drug offender specifications unconstitutional, and asked whether Mr. Atkinson's attorney intended to present any evidence with respect to the forfeiture specifications.  Counsel declined to present evidence and did not raise any objection to the forfeiture.  The trial court merged the possession counts with the trafficking counts; sentenced Mr. Atkinson to prison terms totaling thirteen years, six months; and fined him $10,000.  The trial court also ordered the forfeiture of the cellular phones, cash, and vehicle listed in the specifications.

**{¶8}** Mr. Atkinson appealed. His six assignments of error are rearranged for purposes of this Court's disposition.

II.

**ASSIGNMENT OF ERROR NO. 6**

THE IMPOUNDMENT OF ATKINSON'S VEHICLE, AND THE WARRANTLESS SEARCH OF THE VEHICLE, VIOLATED ATKINSON'S RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION.

**{¶9}** In his sixth assignment of error, Mr. Atkinson argues that the trial court erred by denying his motion to suppress the evidence gained as a result of the inventory of his vehicle before it was impounded. Specifically, he has argued that the evidence should have been suppressed because Officer Mitchell did not have a reasonable, articulable suspicion of criminal activity to justify the traffic stop and that the inventory of his vehicle that led to the discovery of the drugs in the backpack was a warrantless search that was not justified by any recognized exception to the warrant requirement.

**{¶10}** This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist.1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then

independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Mr. Atkinson has not challenged the trial court's findings of fact, so this Court's analysis focuses on the legal questions presented.

{¶11} Mr. Atkinson's first argument is that the trial court erred by denying his motion to suppress because Officer Mitchell did not have a reasonable, articulable suspicion of criminal activity to justify the traffic stop. Although Mr. Atkinson raised this issue in his first motion to suppress, which was denied by the trial court as untimely, he did not raise it in his subsequent motion and it was not addressed during the hearing. Because Mr. Atkinson did not raise this issue in the trial court, it cannot be raised on appeal in the first instance. See *State v. Tyburski*, 9th Dist. Lorain No. 18CA011291, 2018-Ohio-4248, ¶ 14, citing *State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, ¶ 26 (9th Dist.) and *State v. Nelson*, 9th Dist. Summit No. 20808, 2002-Ohio-3745, ¶ 6.

{¶12} Mr. Atkinson's second argument is that the evidence gained as a result of the inventory search of his vehicle should have been suppressed because the decision to impound his vehicle was improper and, regardless, the inventory search of the backpack found in the trunk of the vehicle was unconstitutional. This Court disagrees.

{¶13} Subject to specific exceptions, which the State has the burden of establishing, warrantless searches are unreasonable per se under the Fourth Amendment. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 98, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). "An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution." *State v. Hathman*, 65 Ohio St.3d 403, 405 (1992), citing *South Dakota v. Opperman*, 428 U.S. 364 (1976).

Inventory searches serve to protect the owner's property while in police custody, to protect the police from claims that property has been lost or stolen, and to protect officers from danger that may be at hand. *Opperman* at 369.

{¶14} The first step in this Court's analysis is to consider whether Mr. Atkinson's car was lawfully impounded. *See State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 23-29. *See also Hathman* at paragraph two of the syllabus. The Codified Ordinances of the City of Elyria authorize police officers to impound a vehicle "left unattended due to the removal of an * * * arrested operator." Codified Ordinances of the City of Elyria 303.08(a)(7). *See generally Leak* at ¶ 23-25. Officer Mitchell testified that she impounded Mr. Atkinson's vehicle pursuant to the Elyria Police Department's written policy, which was introduced as an exhibit during the suppression hearing. That policy references and incorporates the language of Codified Ordinances of the City of Elyria 303.08(a)(7). Officer Mitchell testified that Mr. Atkinson was the driver and only occupant of his vehicle, and he was arrested on an outstanding bench warrant. Although Mr. Atkinson has argued that the policy required Officer Mitchell to exercise her discretion, which in his view, warranted an exception, the policy states that it "does not impose a duty upon the officer to release a vehicle when a city ordinance authorizes impoundment." The impoundment of his vehicle was, therefore, lawful.

{¶15} Having determined that the impoundment of Mr. Atkinson's vehicle was lawful, this Court must consider whether the inventory search of the vehicle was reasonable for purposes of the Fourth Amendment. *See Leak* at ¶ 30-33. An inventory search of a lawfully impounded vehicle satisfies the Fourth Amendment's requirement of reasonableness when the search is conducted "in good faith and in accordance with reasonable standardized procedure(s) or established routine." *Hathman* at paragraph one of the syllabus. "Conversely, a search conducted

with investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search." *State v. Williams*, 9th Dist. Summit No. 17727, 1996 WL 539194, *6 (Sept. 25, 1996), citing *State v. Caponi*, 12 Ohio St.3d 302, syllabus (1984), *certiorari denied* 469 U.S. 1209 (1985).

{¶16} Officer Mitchell testified that she and her fellow officers conducted an inventory search of Mr. Atkinson's vehicle pursuant to established department policy. That policy provides that "[i]t is the policy of the Elyria Police Department to inventory the contents of all vehicles impounded by the Department." It further explains that "[t]he purpose of the inventory is to protect the owner's property while it remains in police custody, to protect the Department against claims or disputes over lost or stolen property and/or damage to the vehicle or its contents, and finally, for the protection of the officers from potential danger from items in the vehicle." *Compare Opperman*, 428 U.S. at 369. There is no evidence in the record from which this Court could draw the conclusion that Officer Mitchell, who acted in accordance with established policy, was motivated by pretext. It remains, then, to consider whether Officer Mitchell's search of the backpack comported with the requirements of the Fourth Amendment.

{¶17} "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *Hathman* at paragraph two of the syllabus. A closed backpack, for example, may be opened during an inventory search that is conducted pursuant to a standardized procedure that promotes legitimate government objectives when there is no demonstration that the police acted in bath faith or with the sole intent of investigation. *Id*. at 406-

407, citing *Colorado v. Bertine*, 479 U.S. 367, 372-376 (1987). "When a police impoundment policy specifically addresses the inventory of closed containers and governs the procedures to be used by the police, the opening pursuant to this policy of a closed container by the police is not pretextual and thus is reasonable for Fourth Amendment purposes." *State v. Peagler*, 76 Ohio St.3d 496 (1996), paragraph two of the syllabus.

{¶18} The Elyria Police Department's policy regarding the scope of inventory searches provides:

> The inventory will be limited to areas of the vehicle that are open or for which a key is available. An officer should unlock the doors of the vehicle, if possible without damaging the vehicle, but should not force entry into a locked dash compartment or trunk. If the compartment is unlocked or a key is available, however, those compartments will also be checked. *Any packages or containers located during the inventory inspection, and that are not sealed or locked when located, will be opened and the contents of same inventoried*.

(Emphasis added.) Officer Mitchell testified that she was able to access the trunk by using the mechanism for opening it located in the passenger compartment. She explained that inside the trunk, she found a backpack that was zipped, but not locked or otherwise sealed. The plain language of the Elyria Police Department's policy contemplates that items such as the backpack found in Mr. Atkinson's trunk will be opened during the course of an inventory search. Officer Mitchell's decision to open the backpack during the course of the inventory search pursuant to policy, therefore, comports with the requirements of the Fourth Amendment. *See Hathman* at paragraph two of the syllabus. *See generally Bertine* at 372-375.

{¶19} The trial court did not err by denying Mr. Atkinson's motion to suppress. His sixth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO DECLARE A MISTRIAL AND ORDER A NEW TRIAL WITH A DIFFERENT

JURY POOL BECAUSE THE COMPLETE EXCLUSION OF AFRICAN-AMERICANS FROM THE JURY POOL DEPRIVED ATKINSON OF HIS RIGHT TO TRIAL BY A JURY DRAWN FROM A "FAIR CROSS-SECTION OF THE COMMUNITY" GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

{¶20} In his first assignment of error, Mr. Atkinson has argued that the trial court erred by denying his motion for a mistrial based on the composition of the jury array.

{¶21} Crim.R. 24(F) provides that counsel may challenge a jury array "on the ground that it was not selected, drawn or summoned in accordance with law[.]" Any such challenge must be made before voir dire commences. *Id. See also State v. Fears*, 86 Ohio St.3d 329, 347-348 (1999); *State v. Curry*, 2d Dist. Greene No. 2012-CA-50, 2014-Ohio-3836, ¶ 30; *State v. Reed*, 6th Dist. Lucas No. L-97-1133, 1998 WL 336317, *2 (June 12, 1998), fn.1; *State v. Flinn*, 9th Dist. Summit No. 8786, 1978 WL 215316, *3 (Aug. 9, 1978). In this case, however, Mr. Atkinson did not object to the composition of the array until the day after voir dire was completed, immediately prior to the commencement of trial. His objection was untimely, and his first assignment of error is overruled on that basis.

## ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO HOLD THAT R.C. 2925.03(A)(2) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO ATKINSON BECAUSE IT ESTABLISHES A STATUTORY IRREBUTTABLE PRESUMPTION IN FAVOR OF THE PROSECUTION ON AN ESSENTIAL ELEMENT OF THE OFFENSE FOR WHICH ATKINSON WAS INDICTED, TRIED AND CONVICTED.

{¶22} Mr. Atkinson's fifth assignment of error argues that R.C. 2925.03(A)(2) is unconstitutional on its face and as applied to him because, he maintains, proof that large quantities of marijuana and cocaine were found in the trunk of his vehicle establishes a presumption that he "[knew] or ha[d] reasonable cause to believe that the controlled substance[s] * * * [were] intended for sale or resale by the offender or another person." This Court does not agree.

{¶23} R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Mr. Atkinson's brief does not explain by what tenets of statutory construction he concludes that R.C. 2925.03(A)(2) establishes an "irrebuttable presumption," but it appears that his argument is that proof of possession necessarily implies proof of trafficking.

{¶24} R.C. 2901.22(B) explains the culpable mental state required by R.C. 2925.03(A)(2):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2925.03(A)(2) requires a defendant to *knowingly* "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance" – or, in other words, to take these actions when he "is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Proof that an individual possessed a controlled substance, in any amount, does not relieve the State of its burden to prove that the defendant acted knowingly under the plain terms of the statute. Mr. Atkinson's conclusion that R.C. 2925.03(A)(2) is unconstitutional on its face therefore is incorrect.

{¶25} Although it is unclear from his brief, it appears that Mr. Atkinson's argument may also argue that R.C. 2925.03(A)(2) had the effect of establishing a presumption with respect to an element of the offense in this case. To that extent, his argument seems to relate to the

circumstantial nature of the evidence that tended to demonstrate that he acted knowingly. This Court notes that Mr. Atkinson did not challenge his convictions on the grounds that they were supported by insufficient evidence. Nonetheless, this Court has recognized the well-established principle that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶26} "'When the defendant's culpable mental state is in issue, the proof of a mental state *must* be derived from circumstantial evidence, as direct evidence will not be available.'" (Emphasis added.) *State v. Syed*, 9th Dist. Medina Nos. 17CA0013-M, 17CA0014-M, 2018-Ohio-1438, ¶ 23, quoting *State v. Flowers*, 9th Dist. Lorain No. 03CA008376, 2004-Ohio-4455, ¶ 15. Similarly, "mere possession of drugs is insufficient to prove trafficking," but constructive possession of drugs that have been packaged for sale along with possession of other paraphernalia associated with sale is sufficient evidence of trafficking. *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 10, citing *State v. Mielke*, 12th Dist. Warren No. CA2012–08–079, 2013-Ohio-1612, ¶ 46. Possession of a large quantity of drugs involved in an offense may also be one piece of circumstantial evidence that tends to prove a violation of R.C. 2925.03(A)(2). *See*, *e.g.*, *State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, ¶ 32; *State v. Burton*, 8th Dist. Cuyahoga No. 107054, 2019-Ohio-2431, ¶ 48; *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 39.

{¶27} Officer Mitchell testified regarding the drugs that she found in Mr. Atkinson's vehicle and described the location where each item was found. Officer Mitchell testified that she found a brightly colored folder containing a utility bill that bore Mr. Atkinson's name and address in the main compartment of the bag along with a large bag of marijuana. She noted that the quantity of drugs found in Mr. Atkinson's vehicle was remarkable in that it was not an amount

consistent with personal use. She also testified that one large bag found in the trunk contained nineteen smaller baggies of a white, powdery substance, and she explained that the presentation of that bag indicated drugs that had been prepared for sale. In addition, officers found a digital scale that bore a white, powdery substance and five cellular phones in the passenger compartment of the vehicle, and Mr. Atkinson carried an additional cellular phone and a large quantity of cash on his person. All of this evidence, although circumstantial, tended to demonstrate that Mr. Atkinson "knowingly * * * [p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance" when he knew or had "reasonable cause to believe that the controlled substance or a controlled substance analog [was] intended for sale or resale[.]" R.C. 2925.03(A)(2).

{¶28} R.C. 2925.03(A)(2) does not unconstitutionally establish a presumption that one element of the offense is satisfied by proof of another, nor did it operate to do so in this case. Mr. Atkinson's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GRANT ATKINSON A NEW TRIAL BASED ON NEW PRECEDENT ANNOUNCED BY THE UNITED STATES SUPREME COURT WITHIN TWO WEEKS OF ATKINSON'S SENTENCING IN THIS CASE.

{¶29} In his fourth assignment of error, Mr. Atkinson argues that the trial court erred by denying his motion for a new trial based on the United States Supreme Court's decision in *Timbs v. Indiana*, 586 U.S. ___ , 139 S.Ct. 682 (2019). This Court does not agree.

{¶30} Crim.R. 33 provides that a new trial may be granted in the following circumstances:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;

(5) Error of law occurring at the trial;

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Crim.R. 33(E)(5), which lists invalid grounds for granting a new trial, also provides that a new trial may not be granted for "[a]ny other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." Even assuming, without deciding, that a new trial may be granted on the basis of an intervening decision of a superior court—and that a criminal forfeiture issue is one that would warrant relief in the form of a new trial—Mr. Atkinson's argument fails because he was neither prejudiced nor prevented from having a fair trial on this basis.[1]

{¶31} In *Timbs*, the State of Indiana brought an action for civil forfeiture of a vehicle subsequent to the conviction of its owner for a drug-related offense. *Id*. at 686. The trial court concluded that the vehicle's worth was disproportionate to the offenses of which he had been

---

[1] To the extent that Mr. Atkinson's argument is that "this Court should reverse the sentence and remand with instructions for sentencing in conformity with *Timbs*[,]" we note that "an alleged constitutional violation that occurred during the sentencing proceedings [] is not appropriately raised in a Crim.R. 33 motion for new trial." *State v. Lorraine*, 11th Dist. Trumbull No. 2017-T-0028, 2018-Ohio-3325, ¶ 23.

convicted and, therefore, that forfeiture of the vehicle was an excessive fine under the Eighth Amendment. *Id*. The Indiana Supreme Court concluded that the Excessive Fines Clause of the Eighth Amendment did not restrict state action. *Id.* The United States Supreme Court disagreed, noting that *in rem* forfeitures fall within the ambit of the Excessive Fines Clause and holding that it applies to the states by operation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 687, 689.

{¶32} The Ohio Supreme Court, unlike the Supreme Court of Indiana in *Timbs*, has long recognized that the Excessive Fines Clause of the Eight Amendment applies to the states. *State v. Hill*, 70 Ohio St.3d 25 (1994), syllabus. *See also State v. O'Malley*, 9th Dist. Medina No. 19CA0032-M, 2020-Ohio-3141, ¶ 9. Although the holding of *Timbs* has long been recognized as a matter of law in Ohio, Mr. Atkinson declined the opportunity to present any evidence related to the forfeiture during his sentencing hearing. Consequently, even assuming that a new decision of a superior court could warrant a new trial under Crim.R. 33, Mr. Atkinson was not prejudiced in this case.

{¶33} Mr. Atkinson's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING ATKINSON'S MOTION TO STRIKE THE MANDATORY SENTENCING PROVISIONS OF R.C. 2925.03(C)(4)(G) AND R.C. 2925.11(C)(4)(F) AS VIOLATIVE OF THE SEPARATION OF POWERS DOCTRINE OF THE OHIO CONSTITUTION BECAUSE THE GENERAL ASSEMBLY HAS USURPED THE ROLE, FUNCTION AND DISCRETION OF THE COURT IN IMPOSING SENTENCE UPON CONVICTION OF THE APPLICABLE OFFENSES.

{¶34} Mr. Atkinson's second assignment of error argues that his mandatory sentences as a major drug offender are unconstitutional because they violated the separation of powers doctrine. This Court does not agree.

{¶35} R.C. 2925.03(C)(4)(g) and R.C. 2925.11(C)(4)(f) provide that if the amount of cocaine involved in a violation of R.C. 2925.03(A) and R.C. 2925.11(A), respectively, is greater than or equal to 100 grams, the offense is a first-degree felony, and the offender is a "major drug offender." *See also* R.C. 2929.01(W). Under these circumstances, the offender must be sentenced to the maximum prison term for a first-degree felony. *See also* R.C. 2929.13(F)(5); R.C. 2929.14(B)(3).[2]

{¶36} "The legislature has the initial right to provide for sentences, mandatory or otherwise, that are felt to be consistent with the nature of the crime committed. A mandatory incarceration provision does not per se violate the separation of powers, even though it may restrict the sentencing discretion of the trial court." *State v. Bonello*, 3 Ohio App.3d 365, 367 (10th Dist.1981). This is because "[t]he discretionary power of judges to sentence is granted by the legislature and can be circumscribed by the legislature." *Cleveland v. Scott*, 8 Ohio App.3d 358, 358 (8th Dist.1983). *See also State v. Thompkins*, 75 Ohio St.3d 558, 560 (1996) ("Pursuant to its police powers, the General Assembly has the authority to enact laws defining criminal conduct and to prescribe its punishment.").

{¶37} This Court has consistently rejected challenges to mandatory sentences on the basis that those sentences violate the separation of powers doctrine. *See*, *e.g.*, *State v. Barnes*, 9th Dist. Lorain Nos. 13CA010502, 13CA010503, 2014-Ohio-2721, ¶ 7; *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 26; *State v. Thompson*, 9th Dist. Medina No. 11CA0112–M, 2012-Ohio-2559, ¶ 24; *State v. Banks*, 9th Dist. Summit No. 25279, 2011-Ohio-1039, ¶ 48.

---

[2] The Reagan Tokes Law, Am.Sub.S.B. No. 201, 2018 Ohio Laws 157, effective March 22, 2019, made substantive amendments to Ohio's felony sentencing statutes with respect to felonies of the first and second degree committed after the effective date of the amendments. Those changes are not at issue in this appeal.

Mr. Atkinson's challenge to the mandatory-sentence provisions of R.C. 2925.03(C)(4)(g) and R.C. 2925.11(C)(4)(f) fails on the same basis. *See State v. Rosado*, 8th Dist. Cuyahoga No. 88504, 2007-Ohio-2782, ¶ 13.

{¶38} Mr. Atkinson's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

IN ADDITION, THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO HOLD THAT 2925.03(C)(4)(G) AND R.C. 2925.11(C)(4)(F) VIOLATED ATKINSON'S RIGHTS TO NOT BE SUBJECTED TO SENTENCES THAT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENTS.

{¶39} In his third assignment of error, Mr. Atkinson maintains that the mandatory sentences required by R.C. 2925.03(C)(4)(g) and R.C. 2925.11(C)(4)(f) constitute cruel and unusual punishment in violation of the United States and Ohio Constitutions. This Court does not agree.

{¶40} The United States Supreme Court has explained that claims that mandatory sentences are cruel and unusual "[have] no support in the text and history of the Eighth Amendment." *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991). "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Id*. at 994-995. In rejecting a claim that the Eighth Amendment required consideration of mitigating circumstances in sentencing, as Mr. Atkinson argues in this case, the Supreme Court concluded that for these reasons, "[t]here can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Id*. at 995. This Court has also previously considered, and rejected,

the argument that mandatory sentences constitute cruel and unusual punishment. *Meadows*, 2013-Ohio-4271, at ¶ 25.[3]

**{¶41}** Mr. Atkinson's third assignment of error is overruled.

III.

**{¶42}** Mr. Atkinson's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

---

[3] In *Harmelin*, the Supreme Court acknowledged the line of cases that established the "individualized capital sentencing doctrine," but also recognized that "there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Id*. at 995. In recent years, the Supreme Court has recognized another distinction with respect to juvenile offenders. *See Miller v. Alabama*, 567 U.S. 460, 480-482 (2012). This distinction, along with the cases to which Mr. Atkinson directs this Court's attention, is inapplicable in this case.

Costs taxed to Appellant.

                           _____

                           LYNNE S. CALLAHAN
                           FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ERIC H. ZAGRANS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.